492 F.2d 1088
 Grover William SIMS, Second Lieutenant, United States Air
Force, rns-zn-zsxeV, Plaintiff-Appellant,
v.
Cecil E. FOX, Brigadier General, Etc., and Dr. John L.
McLucas, Secretary ofthe Air Force, Defendants-Appellees.
 No. 73-2707.
 United States Court of Appeals, Fifth Circuit.
 April 19, 1974, Rehearing En Banc Granted July 24, 1974.
 
 Reginald C. Wisenbaker, Valdosta, Ga., for plaintiff-appellant.
 Hale Almand, Jr., Asst. U.S. Atty., William J. Schloth, U.S. Atty., Sam R. Wilson, Asst. U.S. Atty., Macon, Ga., Dr. John L. McLucas, Sec. of Air Force, Washington, D.C., Earl W. Carson, Asst. U.S. Atty., Macon, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before TUTTLE, BELL and GOLDBERG, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 This appeal raises the question whether the United States Air Force can legally separate a reserve officer for cause by giving him an 'honorable' discharge which, however carries with it a 'separation designation number 588' signifying a discharge on the ground of 'unfitness and/or unsuitability,' without affording such officer an opportunity for a hearing. What is not before the Court is the right of the Air Force to relieve a reserve officer from active duty with an unqualified honorable discharge certificate as a part of a reduction in force without a hearing. Lt. Sims contends that he cannot be discharged on the grounds that he is 'unfit' or 'unsuitable' and ineligible for recall, and also be deprived of his reserve commission as an Air Force officer without minimum procedural due process.
 
 
 2
 The facts may be briefly stated. The plaintiff whose military career had been entirely satisfactory was charged in the Georgia Criminal Courts with several misdemeanors involving indecent exposure. By order of the State Superior Court judge he was sent to the Central State Hospital at Milledgeville, Georgia, where he remained for several months for a period of extensive psychiatric care and treatment. Thereafter, on March 22, 1973, the Georgia Superior Court judge signed an order discharging Sims without any adjudication of guilt as to all charges pending against him, which said order completely exonerated him of any criminal purpose.[1]
 
 
 3
 In the meantime, on January 24, 1973, Sims was notified in writing of the initiation of administrative discharge proceedings under Air Force Regulations 36-2 by the Commander of his wing at the Moody Air Force Base in Georgia. Air Force Regulations 36-2 are entitled 'Administrative Discharge Procedures' and the subhead reads 'This regulation establishes criteria for identifying officers of the Air Force serving in the active military service who, because of evidence of unfitness or unacceptable conduct, should be required to show cause for retention in the Air Force. It also prescribes procedures for the disposition of cases involving such officers and those cases approved under Air Force Regulations 35-62, Military Personnel Security Program, for further processing under this Regulation.' The January, 1973 notice stated: 'I am initiating action against you under AFR 36-2 for the reasons outlined in P4D(4) of that Regulation.' Paragraph (4) deals with the subject matter that may properly subject an officer to an inquiry under Regulations 36-2. Subparagraph D(4) is entitled 'Sexual Perversion' and reads: 'This includes but is not limited to: . . . (4) indecent exposure.'
 
 
 4
 Plaintiff was advised that he could submit written statements within fifteen days and there was attached to the letter an extract of a report of an investigation that had been made by the appropriate Air Force officers. Sims responded on February 7th and stated 'I do not desire to comment on the allegations contained in paragraph 2 to the attached letter.' Paragraph 2 contained the allegations as to the indecent exposure already discussed above. Thereafter on February 27, 1973, the Commander Air Training Command recommended to Headquarters U.S. Air Force that plaintiff be given an honorable discharge from all appointments in the United States Air Force. Under the regulations, since Sims was a probationary reserve officer he was not entitled to a hearing before obtaining a discharge as a matter of right. The Commander recommended processing under section E, Air Force Regulations 36-2, which provides for the Secretary of the Air Force, Personnel Board, to review all the documentary evidence, including that submitted by the officer, but without the appearance of the officer or his representation by counsel unless such appearance is determined by the Board to be necessary.
 
 
 5
 On March 26, 1973, Lt. Sims submitted to the Commander of his wing for forwarding to the Air Training Command a letter expressing his desire to remain in the Air Force and he accompanied this letter with a favorable letter of evaluation relating to his duty performance as well as a report of his psychiatric evaluation at Central State Hospital which contained a statement 'The prognosis in this type of disorder with the appropriate treatment, which is primarily psychotherapy, is fairly good, and chances for recurrence of the symptoms are usually nil.' Sims also forwarded a copy of the order of the Superior Court discharging him from the state criminal proceedings.
 
 
 6
 Following the ex parte consideration of Sims' file proper Air Force authorities notified his Commanding Officer at Moody Air Force Base to have him discharged, and such discharge was to be accomplished in the following manner: 'Show in orders and item 11(c), DD Form 214 (the discharge certificate) reason and authority: SDN 588, P37, AFR 36-12 and this message.' The discharge was to be accomplished within ten days. Prior to the expiration of this date Lt. Sims filed his suit in the district court, seeking to have the discharge enjoined on the grounds that he was entitled to have a hearing with minimal due process procedures before he could be subjected to this unfavorable action against him. The trial court initially granted a temporary restraining order to stay the discharge long enough for it to consider the Government's motion to dismiss. After the hearing the court entered an order dismissing the complaint on the ground that no due process requirements would attach to the ordering of an 'honorable' discharge. The court granted a stay to afford Sims an opportunity to appeal. Following the filing of an appeal this Court extended the stay but ordered the appeal expedited. Unfortunately, following oral argument we found it necessary to have supplied excerpts from the relevant Air Force Regulations, and further briefing on the question of exhaustion of administrative remedies.
 
 
 7
 The real crux of this case is pointed up by the statements by the United States calling attention to the fact that the Secretary of the Air Force may give an 'honorable discharge' to any member of the Air Force without a hearing. The position of the defendant is that there are many kinds of 'honorable discharges' and this particular discharge certificate which the Air Force has ordered given to Sims carries on its face evidence of serious professional or moral misconduct such as would seriously affect his reputation and opportunity for success in civil life. For a young man twenty-three years of age trained as an aircraft pilot, the result may be devastating.
 
 
 8
 It is clear that the notations which are required to be placed on Sims' Form 214 (the discharge certificate) even though it is termed an 'honorable discharge' make it perfectly plain that he will have been discharged as a result of Board action which had been undertaken because of his 'unfitness, unacceptable conduct, or in the interest of national security.' This follows from the fact that the instructions for his discharge directed that the discharge certificate contain an entry at the appropriate place giving 'reason and authority SDN 588 P37 AFR 36-12.' Paragraph 37 of Regulation 36-12 deals only with separation as a 'result of Board action' as to officers 'who fail to meet the standards of conduct and performance prescribed by the Secretary of the Air Force.' It further provides that the designation SDN 588 would identify 'action initiated under AFR 36-2' on any of the grounds of unfitness or unacceptable conduct described in that regulation other than of homosexuality which was assigned SDN 587. In other words, any certificate of discharge bearing the designation SDN 588 carries on its face a statement that the officer concerned had been discharged under Air Force Regulation 36-2 dealing only with 'unfitness, unacceptable conduct or in the interest of national security.' Moreover, as was readily conceded during oral argument, such a discharge would make such officer ineligible for recall to active duty. Furthermore, the order to discharge Sims 'from all appointments in the United States Air Force' means, as we understand it, cancelling his commission in the Air Force Reserve.
 
 
 9
 Simply stated, an honest inquiry into the basis for Sims' discharge would demonstrate that he had been given a discharge for reasons that would greatly undercut the status of the discharge as 'an honorable discharge.' The question we are to face therefore is whether a lieutenant in the Air Force can not only have his normal period of active duty terminated for cause, and be deprived of his Reserve Commission, but also have his future jeopardized by having to carry as his certificate of release from the service a document which impugns his character or reputation without having at least an opportunity to make an oral presentation and witnesses on his behalf at some kind of proceeding beyond that authorized under prevailing regulations. We of course are not considering, as we have no right to, what the Air Force Board of Officers, under a proper regulation, should, or would, be likely to do if Lt. Sims had been afforded a hearing in the true sense of the word. We have cited some favorable aspects of his case above merely to show that his contention that he ought to have an opportunity to appear in person to argue his case either personally or by counsel is not an empty gesture on his part.
 
 
 10
 The most important matter that Sims would normally wish to present to an administrative tribunal would, of course, be the disposition of his criminal case in the Georgia courts, and also the evaluation of his performance of military duties (which was certified by his commanding officer to be unexceptionable), and the prognosis as to his psychological problem made by the Georgia Central State Hospital.
 
 
 11
 There can be no doubt but that Sims' discharge is a flawed passport back to civil life. The detriment he will suffer is of sufficient magnitude to create a genuine issue as to whether the Air Force should not be required to provide him with a hearing at which he could personally be present and make at least an effort to stave off the impending threat to his future reputation and security. As the Supreme Court said in Green v. United States, 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961), when speaking of the need for granting an individual accused in a criminal case the absolute right to speak for himself: 'The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.' The value to a person facing a loss of a substantial right to speak for himself where no counsel was permitted to spepak for him is of course even greater.
 
 
 12
 Moreover, Lt. Sims had a prospect of enjoying his full tour of duty as a flying officer in the Air Force, subject only to normal procedures that might fortuitously make it necessary for his active duty to be terminated earlier. Here, he was deprived of that expectation of continued service, see McDowell v. State of Texas, 465 F.2d 1342 (5th Cir. 1971) because of alleged misconduct.
 
 
 13
 Besides, he was to be deprived of his status as a reserve officer, which carries with it intrinsically valuable emoluments for service as a 'week-end warrior' if he remained in certain reserve categories.
 
 
 14
 We do not doubt that such a right as Sims possessed is sufficiently similar to those rights which the courts have held cannot be taken away without procedural due process as to give validity to his contention here. See McDowell v. State of Texas, supra, Hagopian v. Knowlton, 470 F.2d 201 (2d Cir. 1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). For all that appears in this record he would have continued to serve as an Air Force officer on flying status for a period (which, however, is not made plain in the record before us) but for the action taken because of his acts of indecent exposure which triggered the proceedings commenced against him by the letter of January 24, 1973.[2]
 
 
 15
 Even if this termination for cause of his Air Force status were not in itself the deprivation of a right entitling him to procedural due process, his discharge in a manner that marked him as unfit to serve was of itself the deprivation of a protected right. Such a right was described by the Supreme Court in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In Roth the Court held that a failure to rehire a non-tenured teacher was permissible because nothing damaging to Roth's reputation could be inferred from the state's action. The Court said:
 
 
 16
 'In declining to rehire the respondent, (the state) did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case for 'where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' Wisconsin v. Constantineau, 400 U.S. 433, 437 (, 91 S.Ct. 507, 27 L.Ed.2d 515) (1971); Wieman v. Updegraff, 344 U.S. 183, 191 (, 73 S.Ct. 215, 219, 97 L.Ed. 216) (1952); Joint Anti-Facist Refugee Committee v. McGrath, 341 U.S. 123 (, 71 S.Ct. 624, 95 L.Ed. 817) (1951); United States v. Lovett, 328 U.S. 303, 316-317 (, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252) (1946); Peters v. Hobby, 349 U.S. 331, 352 (, 75 S.Ct. 790, 801, 99 L.Ed. 1129) (1955) (Douglas, J., concurring). See Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 898 (, 81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230) (1961). In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's 'good name, reputation, honor, or integrity' is at stake.' 408 U.S. 564, 573, 92 S.Ct. 2701, 2707.
 
 
 17
 Here, of course, there is precisely the ingredient which was lacking in Roth. The Air Force seeks to discharge Lt. Sims in a manner that denigrates his reputation, honor or integrity because of the nature of the entries on the discharge certificate.
 
 
 18
 A somewhat similar case was decided by the Court of Appeals for the Second Circuit when it concluded that the Court could intervene in a threatened expulsion of a cadet at the United States Military Academy and his return to active duty status where the cadet wad denied a due process hearing.
 
 
 19
 The case of Hagopian v. Knowlton, 470 F.2d 201 (2d Cir. 1972), dealt with action of the United States Military Academy 'separating' a third year cadet for deficiency in conduct after receiving 107 demerits as of a certain date, 5 demerits in excess of the 102 demerit allowance prescribed as a maximum for the period involved. The order of separation would also subject cadet Hagopian to transfer to active duty in the armed services. The cadet challenged the failure of the academy officials to comport with the minimum due process requirements in the procedures by which the demerits were charged against him, since when these demerits accumulated to the number of 102 this would warrant the termination of his cadetship by the academy's academic board. The court held:
 
 
 20
 'We hold that the existing measures presently available to a cadet for contesting an individual award of demerits are sufficient to met minimum standards of due process, but that when an accumulation of awarded demerits renders the cadet subject to separation, he must be granted a fair hearing before being separated, including the right to personally appear and to present witnesses and other evidence in his behalf.'
 
 
 21
 In a carefully considered opinion the court recognized the basic precent that:
 
 
 22
 'Such important matters, (the provision of rigorous and exacting standards of discipline and behavior and personal decorum for cadets) which are a part of the Army's conduct of military affairs and the standards adopted by it to prepare men for military operations, should not be interfered with by the judiciary.' Citing Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953).
 
 
 23
 As is pointed out in the opinion, the court noted that the academic board had a double function. It was first to determine whether the cadet in question had accumulated an excessive amount of validly awarded demerits over the course of the demerit period. Then, if so, it must then determine whether the cadet's 'potential warrants retention,' so as to allow probation rather than separation. In other words the board had a responsibility of doing more than totalling the number of demerits and then exacting the maximum penalty of dismissal from the academy if they equalled more than 102. The board was charged with the requirement of determining whether the cadet's character, qualifications and other 'potential' warranted his retention as a cadet. Here, too, the hierarchy of the Air Force was required to consider the record of Lt. Sims and make a recommendation to the 'character' as well as the 'type' of discharge. Moreover, it is undisputed that the board could have rejected the initial recommendation of Sims' commanding officer that he be discharged from his commission. Such a judgment would necessarily be on much the same standards as that spoken of in Hagopian, i.e. whether Lt. Sims 'potential warrants retention' notwithstanding the truth as to the original charges brought against him. Relevant to this judgment would be the factors already mentioned as to the disposition of his case in the state criminal court, the certification as to the outstanding performance of his duties by his superior officer, and the prognosis as to a possible recurrence of his psychiatric problem. As the court in the Second Circuit said:
 
 
 24
 'Perhaps more importantly, with respect to certain of the demerit awards and especially with respect to the subjective evaluation of the cadet's potential, the opportunity to personally appear and present his case may affect considerably the credibility which the members of the Academic Board attach to the cadet's appeal.'We read the word 'credibility,' to cover more than credibility as to the truth or falsity of the original charges.
 
 The court further said:
 
 25
 'The opportunity to bring witnesses to appear in his behalf may also strengthen the impact of his case above the frail impression which a written submission would make.' 470 F.2d 201, 211.
 
 
 26
 We conclude as did the court in Hagopian and the earlier case of Wasson v. Trowbridge, 382 F.2d 807 (2d Cir. 1967), (a case dealing with the dismissal of a third year student at the Merchant Marine Academy) that at such a hearing:
 
 
 27
 'The (officer) must be allowed to appear and present evidence, including witnesses, on his behalf. The importance of informality in the proceeding militates against a requirement that the cadet be accorded the right to representation by counsel before the Academic Board.'
 
 
 28
 We think the case of Pauls v. Secretary of Air Force, 457 F.2d 294 (1st Cir. 1972), in no way conflicts with what we decide here. In that case the particular officers involved had their active service terminated among a group involved in a reduction in force. They were not selected to appear before a board to answer charges of misconduct for the purpose of determining whether they were to be retained in the service.
 
 
 29
 Finally, the appellees contend that the trial court did not have jurisdiction of this matter because of the failure of Lt. Sims to pursue available administrative remedies. In its brief filed in this Court the government's position is far from clear. It states:
 
 
 30
 'Plaintiff has not exhausted his administrative remedies. He has further administrative appeals under 10 U.S.C. 1552 (32 CFR 865A) and 10 U.S.C. 1553 (32 CFR 865B).'
 
 
 31
 It is apparent that neither of these forms of administrative hearings would be available to Lt. Sims until after his discharge had been completed and his separation both as an active and as a reserve officer had become final. The sections were both enacted initially for the purpose of avoiding a large number of 'private' bills in Congress by which formerly discharged service men sought to have the nature or character or type of discharge certificate corrected because of real or imaginary defects in the military system which they felt had prejudiced them. Both sections are rather broad in their language, but, upon request of the court, government counsel undertook to make plain what it contended with respect to the failure of Lt. Sims to pursue his administrative remedies. Counsel conceded that the discharge review board, established pursuant to 10 U.S.C. 1553 'is not authorized to grant the administrative relief the court apparently is inquiring into.' The government on the other hand contended that the Board for Correction of Military Records established under the authority of 10 U.S.C. 1552 would permit the Secretary of the Air Force to reinstate Lt. Sims if the Board or the Secretary concluded that he had been improperly discharged.
 
 
 32
 As we understand it, this amounts to the contention that Sims should accept his discharge containing the final determination by the Air Force Personnel Board that he was unfit to retain his active duty or reserve status in the Air Force and ineligible for recall and there-after make application to the Board for Correction of Military Records seeking a reinstatement which, if recommended, could be effected only by a discretionary act by the Secretary of the Air Force.
 
 
 33
 While not called to our attention in the government's brief, this argument is most strongly supported by these earlier decisions by this Court: McCurdy v. Zuckert, 1966, 359 F.2d 491, cert. den. sub nom. McCurdy v. Brown, 1966, 385 U.S. 903, 87 S.Ct. 212, 17 L.Ed.2d 133; Tuggle v. Brown, 362 F.2d 801, cert. den., 1966, 385 U.S. 941, 87 S.Ct. 311, 17 L.Ed.2d 220; and Stanford v. United States, 1969, 413 F.2d 1048. These cases are all distinguishable. In none of them did the serviceman's attack on the validity of his discharge ('general' in McCurdy's case, 'undesirable' in Tuggle's case, and 'dishonorable' in Stanford's) deal with the issue of procedural due process in the hearings or review procedures which ultimately produced the termination of the services of each.
 
 
 34
 McCurdy had a full hearing before the Board of Officers at which this Court said 'He was ably represented by both military and civilian counsel. After a full hearing, the Board found,' etc. Nothing appears from the per curiam opinion in Tuggle that the airman had been denied a full hearing. In Stanford the court dealt with a challenge to the validity of a court martial which had culminated in a dishonorable discharge. His attack was based on the contention that he had been denied the constitutional right to indictment by grand jury and trial by petit jury. This Court pointed out the fact that the constitution expressly excepts cases arising in the armed forces from the guarantee of indictment and that the Supreme Court had held that trial by jury was not guaranteed in court martial proceedings, citing Whelchel v. McDonald, 1950, 340 U.S. 122, 71 S.Ct. 146, 95 L.Ed. 141.
 
 
 35
 In this case, the very defect which Lt. Sims asserts here as the basis for his action in the court is one that would prevent the preparation of the kind of record which should be made available for all parties to use at any hearing before the Board for Correction of Military Records. This contention being based upon a procedural defect that goes to the preparation of the record itself is not only a distinguishing characteristic from the prior cases, but it seems clear that it requires a holding that this case presents a proper issue for the court to decide in the present litigation. Without an opportunity to appear before the Personnel Board, it is impossible to see how that Board could adequately appraise Lt. Sims as to his potential for continued service in the Air Force.
 
 
 36
 Moreover, although perhaps in light of this court's decision in McCurdy, supra, not sufficient of itself to warrant judicial intervention prior to actual discharge, we may also take judicial notice of the fact that serious interruption of the duties of a qualified flying officer of the Air Force might have a substantially deleterious effect on his future capabilities and opportunities for promotion so that a complete separation from the service for a substantial period of time would jeopardize his future in the service were he ultimately to prevail.[3]
 
 
 37
 We conclude therefore that this action should not be dismissed for failure of Lt. Sims to await his final discharge, after which he should then seek to have that discharge set aside then seek reinstatement from the Secretary of the Air Force rather than undertake to stay the discharge until he had been accorded a hearing with minimum due process as we have outlined above.
 
 
 38
 The judgment is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.
 
 
 39
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 
 40
 Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.
 
 BY THE COURT:
 
 41
 A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,
 
 
 42
 It is ordered that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.
 
 
 
 [1]
 This procedure is authorized by sections 27-2727 to 27-2732 Ga.Code Ann. The provisions of this statute are as follows:
 Section 1 'Upon a verdict or plea of guilty or a plea of nolo contendere (but) before an adjudication of guilt, the court may, in the case of a defendant who has not been previously convicted of a felony, without entering a judgment of guilt and with the consent of the defendant, defer further proceeding and place the defendant on probation as provided by the Statewide Probation Act (Georgia laws 1956 p. 27). Upon violation of the terms of probation, or upon a conviction for another crime, the court may enter an adjudication of guilt and proceed as otherwise provided. No person may avail himself of the provisions of this (Act) on more than one occasion.' Section 2 'Upon fulfillment of the terms of probation, or upon release by the court prior to the termination of the period thereof, the defendant shall be discharged without court adjudication of guilt. Such discharge shall completely exonerate the defendant of any criminal purpose, shall not affect any civil right or liberties, and he shall not be considered to have a criminal conviction. Should a person be placed under probation under this (act), record of the same shall be forwarded to the office of the State Probation System and to the Identification Division of the Federal Bureau of Investigation.'
 
 
 [2]
 This letter commenced by saying 'I am initiating action against you under AFR 36-2 for the reasons outlined in paragraph 4D(4) of that regulation.' Paragraph 4D(4) states as follows:
 '(4) When recommendation for action is appropriate. A recommendation for action under this regulation is appropriate when any of the circumstances outlined in this paragraph or similar circumstances exist . . .' '(d) Sexual perversion. This includes but is not limited to:
 . . . . no
 '(4) Indecent exposure . . ..'
 
 
 [3]
 For a full discussion of the developing law in cases of this kind see Judicial Review of Military Administrative Discharges, 83 Yale Law Journal 33