Donald P. VINCENT et al.,
Plaintiffs,

v.

James R. SCHLESINGER et al.,
Defendants.

Civ. A. No. 74–1847.

United States District Court,
District of Columbia.

Jan. 29, 1975.

Edward F. Sherman, Indiana University School of Law, Bloomington, Ind., David F. Addlestone, Washington, D. C., Melvin L. Wulf, New York City, Susan H. Hewman, Washington, D. C., for plaintiffs.

Asst. U. S. Atty. Robert S. Rankin, Arnold Anderson Vickery and Brian B. O'Neill, Jr., Dept. of the Army, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

By this action plaintiffs seek judicial review of President Ford's "Program for the Return of Vietnam Era Draft Evaders and Military Deserters" which was announced September 16, 1974, by Presidential Proclamation 4313.[1] The President's Clemency Program set forth a policy of "reconciliation" and applies to draft evaders, military deserters and those persons who were convicted of draft evasion, were given punitive or dishonorable discharge from the armed forces or were confined at that time for such offenses.

This case contests only that portion of the Program that relates to military deserters. The five named individual plaintiffs are persons residing in Canada who are currently absent without authorization from the United States Army or Marine Corps who have received notice from the Clemency Processing Center at Fort Benjamin Harrison, Indiana, that they are eligible for processing under the President's Clemency Program. Plaintiffs War Resistor Information Program and Clemency Information Center are both unincorporated associations whose members are similarly absent without authorization from the armed forces, but who wish to participate in the program. Plaintiffs additionally claim they represent a class of all members of the United States armed forces who are absent without authorization, are eligible for process under the Clemency Program and have grounds for mitigation of the suggested two years alternative service. The defendants are the Secretary of Defense and the officials and subordinate officials of the armed forces who are responsible for the procedures of the Joint Alternate Service Board which was created to process military deserters in accordance with the provisions of the Presidential Proclamation.

Plaintiffs challenge the procedures currently followed by the Joint Alternate Service Board in processing military deserters, asserting that the Board

determinations affect substantial rights, hence "minimal due process" must be met. Specifically, the Plaintiffs allege that the Due Process Clause of the Fifth Amendment mandates that individual military deserters be given an opportunity to personally appear before the Board, that decisions be made in accordance with previously published standards and that some opportunity for review be available. In addition they argue that the clear language of the Proclamation and the Due Process Clause of the Fifth Amendment require that the same "mitigating factors" be considered for all three classes of individuals covered by the Program in determining whether less than two years of alternative service is appropriate in an individual case. Plaintiffs also rely upon Army Regulations to support their contentions that persons before the Board should have up to 72 hours to consult with counsel prior to submitting a resignation for an undesirable discharge which waives their right to any hearing or review. Similarly, Plaintiffs further contend that since a military deserter before the Board is submitting a "guilty plea" and Army Regulations require that such pleas be entered only after a hearing before a Military Judge, the Joint Alternate Service Board should provide a hearing presided over by a Military Judge. Finally, Plaintiffs assert that § 555(e) of the Administrative Procedure Act, 5 U.S.C. § 500 et seq. requires that a "brief statement of grounds for denial" be given in each individual case.

The case is currently before the Court on Defendants' Motion to Dismiss and Plaintiffs' and Defendants' Cross Motions for Summary Judgment. Plaintiffs characterize their complaint as raising two alternative theories supporting the judicial review of the Clemency Program which they seek. The first theory is that the Court has jurisdiction to review and enjoin an exercise of the President's pardon power when the exercise of that power violates a corollary

---

1. 39 F.R. 33293, 1974 U.S.Code Cong. & Admin.News, p. 8216.

provision of the Constitution. Plaintiffs argue in support of their second theory that the terms of a Presidential Proclamation are being administered in a manner which violates the inherent spirit and intent of the Proclamation, and that such maladministration is a violation of law subject to judicial review and correction by issuance of equitable process by the Court.

The government asserts four separate arguments supporting their motion to dismiss: 1) that this Court lacks subject matter jurisdiction; 2) that the issues raised by the complaint present a non-justiciable political question; 3) that the Court should abstain from exercising its jurisdiction since the Plaintiffs have not submitted to the jurisdiction of the Court; and 4) that the due process and equal protection allegations of the complaint fail to state a claim upon which relief may be granted.

■ The Court finds that 28 U.S.C. § 1331(a) confers subject matter jurisdiction on this Court since Plaintiffs have sustained their burden of the requisite jurisdictional amount under the test established and followed in this Circuit. Gomez v. Wilson, 155 U.S.App.D.C. 242, 477 F.2d 411 (1973).

■ Recent case law makes clear to this Court that it can review an exercise of the pardon power to ascertain whether the conditions attached violate corollary constitutional provisions, Schick v. Reed, 419 U.S. 256, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974); Hoffa v. Saxbe, 378 F.Supp. 1221 (D.D.C.1974).

■ Further, it appears that the Court has jurisdiction to review the administration of the terms of a Presidential Proclamation to determine whether the inherent spirit and intent of the Proclamation is being followed, Ex parte Endo, 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243 (1944); Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Peters v. Hobby, 349 U.S. 331, 75 S.Ct. 790, 99 L.Ed. 1129 (1955). The Courts have traditionally declined to anticipate a constitutional law question where a non-constitutional issue is presented for resolution of the dispute, Peters, supra, at 338, 75 S.Ct. 790, and thus Plaintiffs' second theory should be explored first.

The government, however, contends that the Court should not exercise jurisdiction in this case where plaintiffs are asking a determination on an issue that presents a non-justiciable political question, not appropriate for judicial resolution. Plaintiffs herein ask the Court to read the language used by President Ford in Presidential Proclamation 4313 "to do equity" as evidence of his intent to provide equal treatment for the three different groups of persons covered by the Proclamation and the three separate forums designated therein to deal with them.

■ In Baker v. Carr, 369 U.S. 186, at 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the Supreme Court set forth several factors each of which is evidence that an issue presents a non-justiciable political question. The Court finds that two of these factors are present in this case and that therefore the Court should refrain from undertaking such an examination. By asking this Court to review the words and context of the President's exercise of his pardon power in the Proclamation, Plaintiffs are asking this Court to literally read between the lines of the Proclamation. Clearly there is "a lack of judicially discoverable and manageable standards for resolving" such a question. And such a determination is impossible to make "without an initial policy determination of a kind clearly for non-judicial discretion." Therefore the Court holds that whether the President intended the procedures which are currently followed is a political question, not subject to judicial review.

■ The third issue in the Government's Motion to Dismiss is that the Court should exercise its discretionary power to "abstain" from exercising jurisdiction because plaintiffs, who are admittedly fugitives in Canada, are only willing to comply with a decree from

this Court which is favorable to them. Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970); Dawkins v. Mitchell, 141 U.S.App.D.C. 213, 437 F.2d 646 (1970). While this argument is not without merit, the Court is of the opinion that absention would only delay the resolution of the important issues presented and thus the Motion to Dismiss on these grounds must be denied.

■ Plaintiffs contend that the Administrative Procedure Act requires that the Joint Alternate Service Board set forth its reasons for denial of written applications in individual cases pursuant to 5 U.S.C. § 555(e). However, the Court concludes that the Administrative Procedure Act is not applicable to the Joint Alternate Service Board. Although at first glance it would appear that the Board is an "agency" as that term is defined in 5 U.S.C. § 551(1), Schick v. Reed, 419 U.S. 256, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974), makes clear that the pardon power cannot be "modified, abridged or diminished by the Congress." Imposing the procedural requirements of the Administrative Procedure Act upon the exercise of the pardon power would be in direct violation of this express language. Thus Plaintiffs' contention is without merit.

■ Plaintiffs' remaining contention is that military deserters are entitled to access to counsel 72 hours prior to any determination and a decision rendered by a military judge, pursuant to Army Regulations. The Court finds that the Joint Alternate Service Board is not an agency of the Army, but is rather a unique unit specially created to implement the Presidential Proclamation. If Plaintiffs who have deserted from the Army wish to have the benefits of these Army Regulations, the court martial procedure provides them. The Court fails to understand the applicability of these regulations to military deserters

from any other branch of the armed forces. These contentions fail to state claims upon which relief can be granted.

■ The only matters left for resolution by the Court are the cross motions for summary judgment. Plaintiffs assert that the procedures established to carry out Presidential Proclamation 4313 violate the Fifth Amendment Due Process Clause. The cases make clear that a threshold consideration for due process analysis is whether there has been or will be any deprivation of life, liberty or property to trigger the operation of the Fifth Amendment. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Although the distinction between "right" and "privilege" is no longer constitutionally significant for such analysis, deprivation of some entitlement or significant right is required before the due process protections of the Fifth Amendment become operative. Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). Due to the unique position of "military deserters" and the unusually broad scope of the Presidential pardon powers, the Court finds that no such entitlement or significant rights are at stake here.

Plaintiffs assert two interwoven theories to support their contention that the Fifth Amendment Due Process Clause requires that "minimal due process" be afforded those military deserters who participate in the Clemency Program. Plaintiffs first argue that since the Joint Alternate Service Board grants a military deserter an undesirable discharge pending successful completion of the prescribed alternative service, at which time a clemency discharge is granted, and since either discharge classification affects one's future employability, "significant rights" are involved requiring minimal due process.[2] Plaintiffs rely principally upon two cases to

---

**2.** Although Plaintiffs fail to clarify their assertions, it is clear that an attack on one's "good name, reputation, honor, and community standing" can be a deprivation of "liberty" within the Fifth Amendment protection.

Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Roth, supra*; Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

support this assertion. In *Roth, supra,* the Supreme Court held that a non-tenured college teacher was not entitled to a due process hearing upon discharge but noted 408 U.S. at 573,[3] 92 S.Ct. at 2707 that:

> [W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.

If Plaintiffs relied on this case alone, it would be clear to the Court that this language is not dispositive of plaintiffs' contentions since these plaintiffs have been given notice and an opportunity to be heard, albeit in writing.

However, plaintiffs cite the recent case of Sims v. Fox, 492 F.2d 1088 (5th Cir. 1974) wherein a panel of the Court interpreted the above-cited *Roth* language and held that the Air Force could not grant an individual an "honorable" discharge without a hearing with personal participation where that discharge was for "unfitness and/or unsuitability." However, the Fifth Circuit granted a rehearing *en banc* in this case and on December 30, 1974, issued an opinion reversing the earlier decision and affirming the District Court's decision which dismissed the complaint for failure to state a claim upon which relief could be granted. The Court reversal was based in part upon a change in Air Force Regulations which no longer permitted an explanation of the "code designation" on the face of the discharge. The Court held that the Air Force action did not deprive Lt. Sims of any "life, liberty or property" protected by the Fifth Amendment Due Process Clause and

that therefore he was not entitled to a due process hearing before discharge.

Similarly, here, the Court fails to find that the Board is depriving military deserters of any such "liberty" protected by the Fifth Amendment. The President's Clemency Program is an attempt to return to these military deserters (who are currently fugitives facing criminal sanction)[4] a sense of "good name, reputation, honor and community standing."[5]

Secondly, the Plaintiffs argue that the up to two years alternative service imposed upon the absentees by the Board is similar to "release time" criminal sentence. Relying upon Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Plaintiffs assert that minimal due process must be met before such alternative service can be imposed upon absentees.

At the start, it must be noted that Plaintiffs' reliance upon *Wolff, supra,* is misplaced. A careful reading of that opinion indicates it dealt with a prisoner's *statutory entitlement* to good time credit for satisfactory behavior while in prison which could only be forfeited for serious misbehavior.

A case more on point is Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) wherein the Court had occasion to first examine "the extent to which an individual . . . [was being] . . . 'condemned to suffer grievous loss'"[6] before determining whether any procedural protections were due a parolee whose parole was revoked. The Court in *Morrissey, supra,* determined that a parolee did suffer a "grievous loss" when his parole was re-

---

3. Quoting from *Wisconsin, supra,* 400 U.S. at 437, 91 S.Ct. 507.

4. U.C.M.J.–10 U.S.C. Chapter 47; Desertion: 10 U.S.C. § 885, U.C.M.J. Art. 85; Absence without leave: 10 U.S.C § 886, U.C.M.J. Art. 86; Missing Movement: 10 U.S.C. § 887, U.C.M.J. Art. 87; Liability for lost time: 10 U.S.C. § 972.

5. In the President's words: "These young Americans . . . should be allowed the

opportunity to earn return to their country, their communities, and their families, upon their agreement to a period of alternate service in the national interest . . . " Presidential Proclamation 4313.

6. Citing Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951).

voked. The Court herein finds that no such loss is occasioned by acceptance of the clemency program, hence there is no need to determine what procedural process is due.

It is important to note that alternative service is not being imposed upon the military deserters. These persons are fugitives from the law who have been offered an "opportunity to return to their country, their communities and their families" [7] via the President's Clemency Program. In *Hoffa, supra,* the petitioner contended that conditions of his pardon could not be imposed upon him without a due process hearing. As Judge Pratt stated there:

> The President has no power to force the applicant to accept a resulting offer of pardon or commutation . . . under these circumstances, rights are not being involuntarily taken from the prisoner and thus the requirement of a due process hearing does not come into force. 378 F. Supp. 1221, at 1245.

Similarly, here Plaintiffs need not participate in the Presidential Clemency Program. If they wish a full-scale trial, they can choose to take the route of court martial wherein all the procedural relief they seek by this action is provided.

Just as the Court concludes that the Due Process Clause has not been violated by the Joint Alternate Service Board, similarly the Court concludes that the equal protection argument is without merit. Plaintiffs assert that the President's language used in the Proclamation and the Equal Protection Clause both mandate that the same mitigating circumstances be considered for all three classes of individuals covered by the Proclamation, despite the fact that they are processed by three distinctly different forums. As the Court noted above, it will refrain from any examination of what the President intended by the use of the words "mitigating factors as may

be appropriate to seek equity among those who participate in the program."

It is clear that although the Fifth Amendment contains no equal protection clause, it does forbid discrimination which is "so unjustifiable as to be violative of due process." Frontiero v. Richardson, 411 U.S. 677, at 680, n. 5, 93 S.Ct. 1764, at 1767, n. 5, 36 L.Ed.2d 583, (1973); Schneider v. Rusk, 377 U. S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964). The Court fails to find any such discrimination here where three distinct categories of individuals are being processed by three different forums.

Therefore, it is by the Court this 29th day of January, 1975,

Ordered that the Defendants' Motion for Summary Judgment be and hereby is granted and the complaint be and hereby is dismissed.

---

7. Presidential Proclamation 4313.