# Whether the President May Have Access to Grand Jury Material in the Course of Exercising His Authority to Grant Pardons

The President, in the exercise of his pardon authority and responsibilities under Article II, Section 2, Clause 1 of the Constitution, may request that the Pardon Attorney include grand jury information in any recommendation the Attorney may make in connection with a pardon application if the President determines that his need for such information in considering that application outweighs the confidentiality interests embodied in Rule 6(e) of the Federal Rules of Criminal Procedure.

The prohibition in Rule 6(e) cannot constitutionally be applied to prevent the President from obtaining grand jury information already in the possession of the executive branch when the President determines that, for purposes of making a clemency decision, his need for that information outweighs the confidentiality interests embodied in Rule 6(e).

December 22, 2000

MEMORANDUM OPINION FOR THE PARDON ATTORNEY

You have requested our opinion concerning the permissibility of attorneys' in the Department of Justice disclosing grand jury information to the President for his use in evaluating an application for clemency. You would like to have access to such information and be able to disclose it to the President in the course of making a pardon recommendation to him. Specifically, you cite an applicant's alleged perjury before a grand jury as an example of grand jury information that would be material to your evaluation and recommendation to the President concerning a clemency application, particularly where that perjury is related to the facts and circumstances of the offense for which clemency is sought.

We conclude that the President, in the exercise of his pardon authority and responsibilities under Article II, Section 2, Clause 1 of the United States Constitution, may request that you include such information in any recommendation you make in connection with a pardon application if he determines that his need for such information in considering that application outweighs the confidentiality interests embodied in Rule 6(e) of the Federal Rules of Criminal Procedure. In light of such a request, Department of Justice attorneys may disclose relevant grand jury material to you and, ultimately, to the President.

Rule 6(e), which has the force of law pursuant to 28 U.S.C. §§ 2072, 2074 (1994), governs the recording and disclosure of grand jury proceedings. As part of establishing these procedures, Rule 6(e)(2) sets forth a "General Rule of Secrecy" providing that certain persons, including attorneys for the Government, "shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules." Under this rule, no attorney for the Department of Justice may disclose "matters occurring before the grand jury" to any other person, unless one of the rule's enumerated exceptions applies.[1] None of the excep-

---

[1] For the exceptions provided for in the rule, see Fed R. Crim. P. 6(e)(3)(A)–(E).

tions enumerated in Rule 6(e) would appear to apply to this situation.[2] Neverthe-less, we conclude that this prohibition cannot constitutionally be applied to prevent the President from obtaining information already in the possession of the executive branch when the President determines that, for purposes of making a clemency decision, his need for that information outweighs the confidentiality interests embodied in Rule 6(e).

We have previously concluded that, apart from Rule 6(e)'s enumerated excep-tions to its prohibition against disclosure of grand jury material, the disclosure of such material to the President could in some circumstances be authorized on broader constitutional grounds. *See Disclosure of Grand Jury Matters to the Presi-dent and Other Officials*, 17 Op. O.L.C. 59, 65–69 (1993); *Disclosure of Grand Jury Material to the Intelligence Community*, 21 Op. O.L.C. 159, 172–75 (1997) ("Shiffrin Memorandum"). *Cf. Sharing Title III Electronic Surveillance Material with the Intelligence Community*, 24 Op. O.L.C. 262, 274–76 (2000), (Title III information may be disclosed to President where it is of overriding importance to national security or foreign relations and necessary for discharge of President's constitutional responsibilities over these matters). Our 1993 memorandum con-cerned the question whether, and under what circumstances or conditions, the Attorney General may disclose grand jury material covered by Rule 6(e) in briefings presented to the President and other members of the National Security Council. The 1997 Shiffrin Memorandum concerned the permissibility of prosecu-tors' in the Department of Justice disclosing grand jury information to agencies in the intelligence community for certain official purposes. In both opinions, we considered the President's broad Article II responsibility to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, and, in particular, his con-stitutionally based responsibilities for national defense and foreign affairs. We con-cluded that, in rare circumstances, these Article II responsibilities may independ-ently justify the disclosure of pertinent grand jury information to him and certain of his advisors. *Cf. Craig v. United States*, 131 F.3d 99, 103 (2d Cir. 1997) (recog-nizing exceptions to Rule 6(e) beyond those enumerated in the rule).

In the context of the question presented by you, we are concerned with a specifi-cally enumerated and exclusive constitutional presidential power — the President's power to grant pardons under Article II, Section 2, Clause 1 of the United States Constitution. The Constitution provides that the President "shall have Power to

---

[2] We are unable to conclude that providing the President with grand jury material for the purpose of making a fully informed decision on a clemency matter falls within Rule 6(e)(3)(A)(ii)'s exception permitting disclosure to such government personnel "as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law." The information being provided to you and the President is for the purpose of assisting the President in exercising his pardon power discretion, which we view as entirely distinct from the Department of Justice's execution and enforcement of the criminal laws of the United States Nor can we conclude that Rule 6(e)(3)(C)(i)'s exception permitting the district court to direct disclosure "preliminary to or in connection with a judicial proceeding" is applicable here. *Cf In re Petition to Inspect and Copy Grand Jury Materials*, 735 F 2d 1261, 1271 (11th Cir. 1984) (although judicial investigating committee's consideration of complaint against Article III judge was similar to a judicial proceeding covered by Rule 6(e)(3)(C)(i), that exception did not apply).

grant Reprieves and Pardons for Offenses against the United States, in the Course of Exercising His Authority to Grant Pardonsexcept in Cases of Impeachment.'' U.S. Const. art. II, § 2, cl. 1. The assignment of the pardon power to the President alone was the product of a considered decision by the Framers. Before making that choice, the Framers debated, and rejected, possible limitations on the President's authority to grant pardons. A proposal to restrict the President's pardon power by requiring consent of the Senate to pardon decisions was soundly defeated. *See* 2 Max Farrand, *The Records of the Federal Convention of 1787* at 419 (rev. ed. 1966). Similarly, in considering the more modest proposal of denying the President the authority to grant pardons in ''cases of treason,'' Gouverneur Morris and James Wilson argued that the pardon power should be left with the Executive and not the Legislature. *See id.* at 626. Rufus King likewise asserted that he ''thought it would be inconsistent with the Constitutional separation of the Executive and Legislative powers to let the prerogative be exercised by the latter.'' *Id.* In response, James Madison ''admitted the force of [the] objections to the Legislature,'' but argued that treason presented a special case. *Id.* at 627. In the end, even this more limited motion failed by a vote of 8 to 2. *Id.* In *The Federalist No. 74*, Alexander Hamilton explained the value of leaving the pardon power exclusively to the President: ''As the sense of responsibility is always strongest, in proportion as it is undivided, it may be inferred that a single man would be most ready to attend to the force of those motives which might plead for a mitigation of the rigor of the law, and least apt to yield to considerations which were calculated to shelter a fit object of its vengeance.'' *The Federalist Papers* at 447–48 (Clinton Rossiter ed., 1961).

The Supreme Court's decisions recognize that the pardon power is different from many other presidential powers in that it is textually committed exclusively to the President. *See United States v. Klein*, 80 U.S. (13 Wall.) 128, 147 (1871) (''[t]o the executive alone is intrusted the power of pardon''); *see also Public Citizen v. Department of Justice*, 491 U.S. 440, 485 (1989) (Kennedy, J., concurring) (noting that pardon power is ''commit[ted] . . . to the exclusive control of the President''). The Court has explained that:

> The power thus conferred is unlimited, with the exception [of impeachments]. It extends to every offence known to the law, and may be exercised at any time after its commission, either before legal proceedings are taken, or during their pendency, or after conviction and judgment. This power of the President is not subject to legislative control. Congress can neither limit the effect of his pardon, nor exclude from its exercise any class of offenders. The benign prerogative of mercy reposed in him cannot be fettered by any legislative restrictions.

*Ex Parte Garland*, 71 U.S. (4 Wall.) 333, 380 (1866). Since the pardoning power is an "enumerated power" of the Constitution, "its limitations, if any, must be found in the Constitution itself," *Schick v. Reed*, 419 U.S. 256, 267 (1974), and the President's pardon power "cannot be modified, abridged, or diminished by the Congress," *id.* at 266. The Court has repeatedly affirmed this principle that the President's pardon power must be left unfettered and is not subject to congressional encroachment. *See, e.g., id.* at 266 (pardon power "flows from the Constitution alone, not from any legislative enactments" and "cannot be modified, abridged, or diminished by the Congress"); *Ex parte Grossman*, 267 U.S. 87, 120 (1925) ("The executive can reprieve or pardon all offenses . . . without modification or regulation by Congress."); *see also Vincent v. Schlesinger*, 388 F. Supp. 370, 374 (D.D.C. 1975) (Congress cannot subject pardon process to the procedural requirements of the Administrative Procedure Act).

Because the President's pardon authority is plenary, statutes that seek to impose what may seem to be only minor incursions on the President's discretion are unconstitutional. *See Grossman*, 267 U.S. at 121 ("[W]hoever is to make [the pardon power] useful must have *full discretion* to exercise it. . . . Our Constitution confers this discretion on the highest officer in the nation in confidence that he will not abuse it.") (emphasis added); *Schick*, 419 U.S. at 263 ("[T]he draftsmen of [the pardon clause] spoke in terms of a 'prerogative' of the President, which ought not be 'fettered or embarrassed.' ") (quoting *The Federalist No. 74* (Alexander Hamilton)).[3] Even statutes of general application are invalid as applied if, in a particular application, they serve no purpose other than that of regulating the exercise of an exclusive presidential power. In *Public Citizen*, the Supreme Court addressed whether the Federal Advisory Committee Act ("FACA"), which requires, among other things, that advisory committee minutes, records, and reports be open to the public, applies to consultations between the Department of Justice and the American Bar Association ("ABA") concerning potential judicial nominees. 491 U.S. at 443–45. FACA did not purport to regulate directly the manner in which the President exercised his exclusive constitutional power to nominate judges or to regulate any aspect of the content of the Department's advice to the President concerning potential judicial nominees. Nonetheless, the district court concluded that opening consultations between the Department and an outside advisory group to the public "infringed unduly on the President's Article II power to nominate federal judges," a finding that prompted the majority of the Court to interpret the statute not to apply to the Department's consultations with the ABA so as to avoid the "serious constitutional problems" raised by a contrary interpretation. *Id.* at 466–67. Justice Kennedy's opinion concurring in

---

[3] The Court has likewise recognized that the Judiciary cannot constrain the exercise of the pardon power This principle is illustrated by the Court's decision in *Grossman* In that case, the Court upheld the President's right to pardon an individual for a criminal contempt of court despite the argument that extending the President's pardon power to a judicially imposed contempt of court would violate the constitutionally mandated separation of executive and judicial powers because the contempt power is so indispensable to a judge 267 U S at 120–21.

the judgment, which was joined by Chief Justice Rehnquist and Justice O'Connor, reached the constitutional issue and concluded that FACA's procedural requirements could not apply to the President's nomination power because "[n]o role whatsoever is given either to the Senate or to Congress as a whole in the process of choosing the person who will be nominated for appointment." *Id.* at 483 (Kennedy, J., concurring). Citing the Court's cases on the pardon power, Justice Kennedy stated: "[W]here the Constitution by explicit text commits the power at issue to the exclusive control of the President, we have refused to tolerate *any* intrusion by the Legislative Branch." *Id.* at 485.

Rule 6(e), of course, is a rule of general application that is neither intended nor designed to regulate or affect the President's pardon power. Instead, the rule serves broad interests in regulating the secrecy of grand jury proceedings.[4] Even as applied to the exercise of the President's pardon power, moreover, Rule 6(e) continues to serve these interests, and thus application of the rule in a way that incidently affects the President's pardon power, unlike application of FACA to the nominations process, cannot be said to serve no purpose other than that of regulating the exercise of an exclusive presidential power.

Nevertheless, it is equally true that application of Rule 6(e) in this context conflicts with the President's interest in having access to information that is legitimately in the possession of his subordinates and relevant to the exercise of his constitutionally enumerated and exclusive pardon power. In such a case, it is appropriate to resolve this conflict through a balancing approach that asks:

> whether the statute at issue prevents the President " 'from accomplishing [his] constitutionally assigned functions,' " and whether the extent of the intrusion on the President's powers "is justified by an overriding need to promote objectives within the constitutional authority of Congress."

*Public Citizen*, 491 U.S. at 484–85 (Kennedy, J., concurring) (quoting *Morrison v. Olson*, 487 U.S. 654, 695 (1988), quoting *Nixon v. Administrator of General Services*, 433 U.S. 425, 443 (1977)).[5]

In performing such a balancing of interests, it is important to keep in mind that the factors bearing on the President's decision to exercise his pardon power, as an act of mercy, are subjective and undefined. *See* Letter from Daniel Lyons, Pardon Attorney, to Senator Styles Brides (Jan. 10, 1952) ("In the exercise of

---

[4] *Cf. United States v. Sells Engineering,* 463 U.S. 418, 424–25 (1983) (recognizing that the grand jury is a constitutionally "enshrined" "instrument of justice in our system of criminal law," and that the secrecy of its proceedings is critical to furthering its purposes).

[5] On the other hand, where Congress purports to regulate an exclusive, constitutionally enumerated presidential power, or where general law applies in an area in which Congress has no constitutional interest of its own, the President's interest is given priority without a need to engage in a balancing of interests since the Constitution entrusts to the President alone the decision to exercise that power *See Public Citizen,* 491 U.S. at 484–85 (Kennedy, J. concurring) ("[W]here the Constitution by explicit text commits the power at issue to the exclusive control of the President, [the Supreme Court has] refused to tolerate *any* intrusion by the Legislative Branch.").

his pardoning power, the President is amenable only to the dictates of his own conscience, unhampered and uncontrolled by any person or branch of Government''). Moreover, ''the very essence of the pardoning power is to treat each case individually.'' *Schick*, 419 U.S. at 265.[6] Where the President has to make a pardon judgment, information concerning alleged perjury before a grand jury by an applicant may be material to the President's evaluation of that applicant's character and circumstances. Confronted with evidence that a person committed perjury before a grand jury, the President might conclude that the person should not be pardoned for committing a different offense because that person is a ''fit object of [the law's] vengeance'' and undeserving of mercy. *The Federalist No. 74*, at 448. By restricting the President's access to information already in the possession of the Executive Branch that he considers relevant to a pardon decision, Rule 6(e) effectively prevents the President from accomplishing his constitutionally assigned function by depriving him of information that he has determined he needs to discharge that function.

Such an interference with the discharge of an exclusive constitutional prerogative is not justified by any ''overriding need to promote objectives within the constitutional authority of Congress.'' *Public Citizen*, 491 U.S. at 484–85. The Supreme Court has identified ''several distinct interests served by safeguarding the confidentiality of grand jury proceedings.'' *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218–19 (1979). Those interests are:

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Id.* at 219.

The Court has also recognized, however, that ''the concerns that underlie the policy of grand jury secrecy are implicated to a much lesser extent when the disclosure merely involves Government attorneys.'' *United States v. John Doe, Inc. I*, 481 U.S. 102, 112 (1987); *see also Sells Engineering*, 463 U.S. at 445

---

[6] Of course, the intensely subjective nature of a pardon decision does not mean that the President could choose, in his discretion, to grant pardons, for example, in exchange for cash payments The remedy for such a misuse of the power would be removal from office after impeachment and conviction for treason, bribery, or other high crimes and misdemeanors U.S Const art. II, § 4

("Nothing in *Douglas Oil*, however, requires a district court to pretend that there are no differences between governmental bodies and private parties."). That point is particularly pertinent here. Because the President and the Department of Justice have traditionally treated the Department's deliberations in connection with a pardon recommendation as confidential, *see* Letter from Janet Reno, Attorney General, to The President at 3 (Sept. 16, 1999) (detailing Department's practice of declining to recognize congressional right to compel disclosure of pardon materials), any disclosure of material protected by Rule 6(e) to the President and those assisting him in the exercise of his pardon power is likely to have, at most, a minimal effect on grand jury secrecy because the dissemination will be so limited.[7] The balance of competing constitutional interests, therefore, weighs heavily in favor of the President. Accordingly, because application of Rule 6(e) in accordance with its plain terms could, in this context, unduly fetter or abridge the President's exercise of his exclusive constitutional authority to pardon, it should be read to be "subject to an implied exception in deference to such presidential powers." *Rainbow Navigation, Inc. v. Dep't of the Navy*, 783 F.2d 1072, 1078 (D.C. Cir. 1986) (Scalia, J.).

Invocation of this exception, however, presents certain practical difficulties. Although the President may consider information concerning an applicant's possible perjury before a grand jury to be relevant to the exercise of his pardon power, he will not know that such information exists until it is brought to his attention. Rule 6(e), however, prohibits prosecutors from sharing such information with your office because it only permits a prosecutor to share grand jury material with other Department of Justice attorneys for the purpose of assisting them in enforcing federal criminal law, *see Sells Engineering*, 463 U.S. at 428, and, as noted above, sharing such information with Department attorneys who assist the President in the exercise of his pardon power is not a disclosure made in aid of federal law enforcement. *See supra*, note 2. Moreover, due to the intrinsically subjective nature of the President's pardon decision, it is difficult for anyone other than the President to assess the materiality of information to the exercise of his pardon authority. Therefore, absent a request by the President, a prosecutor should not disclose grand jury material to the President, or to your office on behalf of the President, based on his or her own assumption that the President's need for such information outweighs the interests of grand jury secrecy.

The President may, we believe, avoid this apparent conundrum by issuing a standing request for certain grand jury material, to the extent it exists, relating to particular issues that he deems relevant to his pardon decisions. That standing request may also provide that prosecutors are permitted to share such grand jury material with identified Department of Justice officials (such as the Attorney Gen-

---

[7] In this regard, as highly sensitive material, we advise that all reasonable precautions be taken to safeguard the confidentiality of this material and to ensure that it is shared only with those who require access to it in order to advise the President on pardon matters

eral or Deputy Attorney General, in consultation with the Pardon Attorney) for the purpose of having them make the preliminary determination whether the grand jury information is sufficiently relevant to the pardon decision to warrant its being provided to the President. Any such standing directive, however, should be carefully written to make clear that disclosures of grand jury material should not be routine, but rather should be made only when certain factors indicate the existence of material relevant to the President's decisionmaking process. These procedures will help insure that such disclosures fall within the category of material that the President has specified as being relevant to his decisionmaking process. Alternatively, disclosure might be authorized on a case-by-case basis as deemed appropriate by the President.

We have concluded in past opinions that, when disclosure of grand jury material is made to the President pursuant to Article II of the Constitution rather than Rule 6(e), prior judicial approval of such disclosure is not constitutionally required. 17 Op. O.L.C. at 68; 21 Op. O.L.C. at 174–75. Similarly, the requirement contained in Rule 6(e)(3)(B), that the court supervising the grand jury must be notified of the names of the people to whom a disclosure was made, does not apply to constitutionally sanctioned disclosures made outside the context of Rule 6(e). *Id.* These same principles apply to any disclosures made under a directive from the President for grand jury materials he deems relevant to his pardon decisions because such a directive would also rest on the President's exercise of an Article II power.[8]

RANDOLPH D. MOSS
*Assistant Attorney General*
*Office of Legal Counsel*

---

[8] In considering disclosure to the President of grand jury material on the basis of non-exclusive constitutional authority, we have noted that the risk of constitutional confrontation could be minimized by seeking the approval of the district court that impaneled the grand jury, invoking the court's inherent authority to disclose grand jury materials for reasons other than those specified in Rule 6(e) 21 Op O.L C. at 175 *See also Craig v. United States,* 131 F.3d 99, 103 (2d Cir 1997) (district court has discretion to go beyond exceptions listed in Rule 6(e) to determine whether special circumstances exist), *In re Petition to Inspect and Copy Grand Jury Materials,* 735 F 2d 1261, 1268 (11th Cir 1984) (district court can fashion alternative method for disclosure under its general supervisory authority over grand jury proceedings and records) *Cf* Letter to Michael Shaheen, Special Counsel/Project Manager, Department of the Treasury Internal Revenue Service Criminal Investigation Division Review, from Eric H Holder, Jr, Deputy Attorney General, *Re: Review of CID Grand Jury Procedures* (Feb. 12, 1999) (recommending seeking court orders authorizing the review of the activities of the Criminal Investigative Division), Memorandum for Michael Shaheen, Jr., Counsel, Office of Professional Responsibility, from Robert B Shanks, Deputy Assistant Attorney General, Office of Legal Counsel, *Re Disclosure of Grand Jury Material to the Office of Professional Responsibility* (Jan. 6, 1984) (recommending seeking court review for disclosure of grand jury material to OPR pursuant to Rule 6(e) for use in investigating charges that prosecutors have engaged in misconduct) Here, however, due to the intrinsically subjective nature of the President's pardon decision, we question whether a court could appropriately assess the materiality of information to the exercise of his pardon authority Moreover, as previously discussed, the President and the Department of Justice have traditionally treated the Department's deliberations in connection with a pardon recommendation as confidential. *See* Letter from Janet Reno, *supra,* at 3. Accordingly, we believe that the prudential rule of seeking court approval for the release of material protected by Rule 6(e) would not apply here, since seeking court approval would necessitate revealing an aspect of departmental or presidential deliberations in connection with a pending pardon application to individuals beyond those the President deems necessary to advise him regarding the exercise of his constitutional prerogative

373